# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mary F.,                                        Case No. 20-cv-111-DSD-KMM

        Plaintiff,

v.                                              **REPORT AND**
                                             **RECOMMENDATION**

Andrew Saul, *Commissioner of Social Security*,

        Defendant.

---

James Greeman, Greeman Toomey, 250 Marquette Ave Ste 1390, Minneapolis, MN 55401, counsel for plaintiff

Chris Carillo, SSA-Ogc, Office of the General Counsel – Suite 350, Social Security Administration, 1301 Young Street, Mailroom 104, Dallas, TX 75202, counsel for defendant

---

This matter is before the Court on the parties' cross-motions for summary judgment. Pl.'s Mot. [ECF No. 12]; Def.'s Mot. [ECF No. 14]. The plaintiff, Mary F. ("Ms. F"), argues that the Commissioner of Social Security's denial of her application for disability benefits should be reversed because the Agency's Administrative Law Judge ("ALJ") improperly evaluated her primary care physician's opinion. The Court concludes that the ALJ failed to give good reasons for discounting the treating physician's opinion. Accordingly, Ms. F's motion for summary judgment should be granted, the Commissioner's motion should be denied, and this case should be remanded to the agency for further proceedings consistent with this opinion.

## I.    Background

Mary F. applied for disability insurance benefits and supplemental security income in February 2016, alleging that she became disabled in November 2015.[1] Tr. of Admin. Record ("R.") 150, 153 [ECF No. 11]. Before applying for disability, she worked for several years as a loan officer for mortgage companies, in sales for a telemarketing and moving company, and in retail customer service. In addition to her previous full-time work, Ms. F used to clean, cook, garden, shop for groceries, ride a bicycle, fish, and go shopping with her daughter. R. 302.

However, Ms. F alleges she became disabled due to a number of physical and mental impairments. *See* R. 94–109. Ms. F's severe impairments include: type II diabetes mellitus; degenerative disc disease of the cervical and lumbar spines; left and right shoulder impingement (with improvement after breast-implant removal in April 2018); rheumatoid arthritis; fibromyalgia; hypothyroidism; generalized anxiety disorder; major depressive disorder; post-traumatic stress disorder; and a history of drug abuse, in remission since 2016.[2] R. 21. These conditions make it difficult for Ms. F to work on a computer for more than 30 minutes and use a mouse; she experiences pain when standing for more than 15

---

[1]    Ms. F initially alleged she became disabled much earlier, but she later amended her alleged onset date of disability to November 2015. R. 40, 57–58.

[2]    Ms. F's life has had a number of challenges that impact her mental health, including the tragic loss of both of her parents, a bitter divorce, struggles with drug abuse, and legal troubles. *See, e.g.*, R. 48, 1065–74. In this appeal, Ms. F does not claim that the ALJ erred in evaluating the limitations caused by her mental impairments. Accordingly, the Court does not discuss these issues in detail, though they obviously impact Ms. F's ability to perform work activities and must be considered in conjunction with her physical limitations when evaluating her disability claim.

minutes; and she becomes irritable with customers when she is in pain. R. 301, 373. She is unable to take care of others, needs help with housework, needs assistance when she leaves the house, and does not drive. R. 302–04. She uses a cervical traction unit almost every day. R. 307.

On August 27, 2018, Ms. F's primary care physician, Dr. Jennifer Riley, provided an opinion regarding Ms. F's functional limitations. R. 1230–33. Dr. Riley found that Ms. F can only occasionally lift and carry up to ten pounds and frequently lift and carry less than ten pounds. R. 1230. Dr. Riley specifically linked these limitations to Ms. F's cervical issues and rheumatoid arthritis. *Id.* ("All are limited by cervical issues and rheumatoid arthritis."). Further, Dr. Riley opined that in an eight-hour workday, Ms. F could stand and walk for less than two hours, sit for less than six hours, and that Ms. F needs to be able to periodically alternate between sitting and standing to relieve pain and discomfort. R. 1230–31. Ms. F's ability to push and pull is also limited in her upper extremities. R. 1231. Dr. Riley explained that Ms. F's limitations on sitting, standing, pushing and pulling are supported by "cervical radiculopathy, [which] causes radiating pain to bilateral arms from [her] neck" and that she has been diagnosed with bilateral shoulder impingement. *Id.* Dr. Riley also found that Ms. F's ability to move her neck is limited to only occasional flexing, extending, rotating, and keeping in a fixed position. *Id.*

Finally, according to Dr. Riley, Ms. F should never be required to reach overhead, kneel, crouch, or crawl. Ms. F can only occasionally stoop down, and she should avoid even moderate exposure to extreme heat, cold, humidity, wetness, and hazards. R. 1233. To support these conclusions, Dr. Riley explained that Ms. F has aggravated arthritic pain with

exposure to certain environments and noted that she "would be concerned about [Ms. F's] safety both physically and mentally if placed in potentially hazardous situations." R. 1233. Dr. Riley also pointed to Ms. F's diagnoses of radiating pain, shoulder impingement, and rheumatoid arthritis for which she sees a specialist. Dr. Riley noted MRI findings for Ms. F's cervical spine, a rheumatology evaluation, a right-shoulder MRI from 2016 showing labral degeneration, and a history of sciatica and chronic lower back pain. *Id.* Despite Dr. Riley's assessment of such limitations, Ms. F's disability claim was unsuccessful.

## II.    Procedural History

The Agency denied Ms. F's disability claim at the initial stage on July 28, 2016. R. 94–109. In part, the Agency based its decision on the July 15, 2016 evaluation of Ms. F's available medical records by Dr. Richard Hadden, who did not examine Ms. F. R. 103–05. Dr. Hadden concluded that Ms. F had far fewer functional limitations than those reflected in the opinion of Dr. Riley, which was not available to him at the time of his analysis. R. 103–04. According to Dr. Hadden, Ms. F retained the ability to lift and carry up to fifty pounds occasionally; lift and carry up to twenty-five pounds frequently; stand or walk about six hours in an eight-hour workday; and sit with normal breaks for about six hours in an eight-hour workday. R. 103. He concluded Ms. F could: climb ramps and stairs, balance, kneel, crouch, and crawl without limitation; climb ladders, ropes, and scaffolds; and bend at the waist frequently. *Id.* Dr. Hadden also found that Ms. F was limited bilaterally in her ability to reach overhead, but could engage in unlimited handling, fingering, and feeling. R. 014. Dr. Hadden suggested there was an absence of objective signs in the medical records to find

Ms. F's impairments were disabling and noted that Ms. F had failed to follow through on a

physical therapy referral, resulting in a discharge after only one visit in April 2015. R. 105.

Ms. F asked the Agency to reconsider its initial decision, and on December 13, 2016,

the Agency denied her claim again. R. 114–31. The reconsideration decision was similarly

based on the analysis of an agency physician, Dr. Steven Richards, who reviewed the

available medical records, but also did not have access to Dr. Riley's opinion or examine

Ms. F. R. 125–27. Dr. Richards reached the same conclusion as Dr. Hadden regarding

Ms. F's physical limitations. R. 125–26. Dr. Richards agreed with the initial denial and

indicated that Ms. F "only presented for minor back pain in [the reconsideration]

timeframe[, was] referred to exercise and [physical therapy, and had] no persistent problems

noted." R. 127.

Ms. F requested a hearing, which was held via videoconference by an Administrative

Law Judge on September 14, 2018. R. 38–64. Ms. F testified in support of her claim,

describing her work history and the limitations she experiences because of her impairments.

R. 47–59. A vocational expert testified at the hearing as well. The ALJ presented a

hypothetical question to the vocational expert incorporating the limitations assessed by

Dr. Hadden and Dr. Richards, along with additional non-exertional limitations. The

vocational expert testified that a person with those limitations would be able to perform

certain full-time jobs, though could not do Ms. F's past relevant work. R. 59–62.

After the hearing, the ALJ issued a written decision denying Ms. F's claim. R. 18–28.

The ALJ determined that Ms. F has the severe impairments identified above and that none

of those impairments, either alone or in combination, meets or medically equals the severity

of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21–23.

The ALJ then determined Ms. F's residual functional capacity ("RFC"), which represents the

most the ALJ believes she could do on a full-time basis given all of her physical and mental

impairments. R. 23–26. The ALJ found as follows:

> [T]he claimant has the residual functional capacity to perform medium work
> … except the claimant is limited to frequent climbing of ladders, ropes,
> scaffolds, frequent stooping; frequent bilateral overhead reaching; and she is
> able to perform simple tasks, follow simple instructions, communicate with
> the public on a superficial and brief basis, is able to make simple work-related
> decisions with no pace restrictions and few, if any, workplace changes.

R. 23. In making this RFC finding, the ALJ found that Ms. F's medically determinable

impairments could reasonably be expected to cause her alleged symptoms, but that her

"statements about the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record." R. 25.

The ALJ further considered the opinions offered by Dr. Riley, Dr. Hadden, and

Dr. Richards. The ALJ assigned "little weight" to Dr. Riley's opinion, explaining only that

her "findings are inconsistent with the objective evidence in the record and appear to be

based on the claimant's self-reports." R. 25. By contrast, the ALJ gave "great weight" to the

opinions of Dr. Hadden and Dr. Richards, concluding that their assessments of a medium

range of work are "supported by the evidence in the record." *Id.*

The Social Security Appeals Council declined Ms. F's request for review. R. 1–6. As a

result, the ALJ's decision became the final decision of the Commissioner subject to judicial

review. 42 U.S.C. § 405(g). Ms. F filed this case on January 8, 2020, challenging the ALJ's

denial of her claim for benefits. Compl. [ECF No. 1].

### III.    Legal Standard

Federal courts will uphold the Commissioner's denial of a disability claim if

substantial evidence supports the ALJ's findings and if the decision is not based on legal

error. *See Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *Collins v. Astrue*, 648 F.3d 869, 871

(8th Cir. 2011). "Legal error may be an error of procedure, … the use of erroneous legal

standards, or an incorrect application of the law," and courts review whether an ALJ based a

decision on legal error de novo. *Collins*, 648 F.3d at 871 (internal citations omitted).

The substantial-evidence standard is more deferential. Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 139 S. Ct. 148, 1154 (2019) (citation omitted); *Krogmeier v. Barnhart*, 294

F.3d 1019, 1022 (8th Cir. 2002). Under this standard, courts should not reverse the

Commissioner's findings merely because evidence may exist in the administrative record that

would support a different conclusion. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015).

Instead, a court will reverse only when the ALJ's decision is outside the reasonable "zone of

choice" created by the evidentiary record. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir.

2008).

### IV.    Discussion

In her summary judgment motion, Ms. F seeks reversal of the ALJ's decision for two

closely related reasons. Primarily, she argues that the ALJ should have given substantial

weight to Dr. Riley's August 27, 2018 opinion. Pl.'s Mem. at 11–13 [ECF No. 13]. Second,

Ms. F contends that the ALJ's determination of her RFC should have included more

significant limitations, including greater restrictions on lifting, standing, and walking, as well

as manipulative limitations. *Id.* at 14–15. As discussed below, the Court concludes that the ALJ failed to provide good reasons for discounting Dr. Riley's opinion, and that error requires remand for further consideration by the ALJ. Because assigning more significant weight to Dr. Riley's opinion may affect the RFC determination, the Court recommends that the case be remanded to the Agency for further proceedings. Therefore, the Court does not address Ms. F's related argument concerning the appropriate limitations to include in the RFC.

### A.    Weighing Opinion Evidence

The Social Security regulations and applicable case law require an ALJ to give deference to a treating physician's opinion. *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2002) ("The opinion of a treating physician is accorded special deference under the social security regulations."). "[A] treating physician's opinion is given 'controlling weight' if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (alteration in original) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002)). If a treating source's opinion is not given controlling weight, the ALJ must still consider the following factors in weighing the doctor's assessment: (1) whether the opinion is given by a medical source that has actually examined the claimant; (2) the length, nature, and extent of a treating physician's relationship to the claimant, including the frequency of examination; (3) the support and explanation provided by the physician; (4) the opinion's consistency with the record as a whole; (5) whether the opinion is provided by a specialist;

and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)–(6); *see also* 20 C.F.R. § 416.927(c)(1)–(6).

"[W]hile a treating physician's opinion is generally entitled to substantial weight, such an opinion does not automatically control because the hearing examiner must evaluate the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (cleaned up). An ALJ may discount or even disregard a treating physician's opinion if, for example, other medical opinions are better supported or if the treating physician provides multiple opinions that, due to their inconsistency, lack credibility. *Prosch*, 201 F.3d at 1013. An ALJ may also discount a treating physician's opinion "that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009).

An ALJ must "always give good reasons for the weight given to a treating source's opinion." SSR 96-2p, *Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, 1996 WL 374188, at *5 (S.S.A. July 2, 1996). This requires a written decision denying a claim for benefits to "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* Failure to provide specificity as to why a treating physician's opinion is rejected is reversible error. *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 553 (8th Cir. 2018) (explaining that the ALJ is required to explain, "with some specificity, why he has rejected the treating physician's opinion" and that "[f]ailure to do so is reversible error"); *see also Lucus v. Saul*, 960

F.3d 1066, 1068 (8th Cir. 2020) (finding that lack of specificity was reversible error rather than a mere drafting issue).

### B.    ALJ Error Assessing Dr. Riley's Opinion

It is undisputed that Dr. Riley is a treating source. As such, her opinion is entitled to controlling or substantial weight unless the ALJ provides good reasons to discount or reject it. The ALJ gave two reasons for assigning "little weight" to Dr. Riley's opinion: "[her] findings are inconsistent with the objective evidence in the record and appear to be based on the claimant's self-reports." R. 25. However, after careful review of the record, the Court concludes that these are not good reasons to discount Dr. Riley's opinion.

#### 1.    Self-Reports

First, the Court addresses the ALJ's assertion that Dr. Riley's opinion appears to be based on Ms. F's self-reports. As a general proposition, a physician's over-reliance on a claimant's subjective complaints can, in some cases, provide a valid basis to discount a treating provider's opinion. *See, e.g.*, *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) (finding ALJ properly discounted opinion evidence where it "cited only limitations based on [the claimant's] subjective complaints, not his own objective findings"). However, the ALJ's assertion that Dr. Riley's opinion suffers from this flaw is not supported by the record. Dr. Riley's August 2018 opinion does not mention Ms. F's self-reports or recite her subjective complaints. Instead, Dr. Riley indicated the extent to which she believes Ms. F can engage in various work-related physical functions and tied each set of limitations she assessed on Ms. F's abilities to various diagnoses, imaging results, or other findings. Nothing on the face of the opinion suggests an improper reliance by Dr. Riley on Ms. F's subjective

complaints, and the ALJ's discussion of the opinion fails to explain why the ALJ found that to be the case.[3]

The Commissioner argues that the ALJ's conclusion that Dr. Riley's opinion was based on Ms. F's subjective complaints is a valid basis for discounting her assessment and, in support, cites *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012), and *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). However, the Court finds neither of these decisions persuasive as to *this case*. In *Renstrom*, the Eighth Circuit, affirming the district court, found that an ALJ had properly discounted a treating doctor's opinion for several reasons, one of which was over-reliance on self-reported symptoms. 680 F.3d at 1064–65. The *Renstrom* court's discussion offers little insight into the circumstances that make it appropriate for an ALJ to discount a treating provider's opinion as improperly based on a patient's subjective complaints. Instead, *Renstrom* simply described the forms the doctor completed for the claimant in its background discussion, and later observed that the ALJ "noted" the opinion was largely based on subjective complaints. 680 F.3d at 1061–62, 1064. *Renstrom* provides no analysis of why it was proper for the ALJ to reach that conclusion and thus provides no guidance for evaluating the ALJ's application of this principle to Dr. Riley's opinion here.

---

[3]     Because the Court finds that remand for reevaluation of Dr. Riley's opinion is appropriate, further proceedings require the ALJ to consider whether Dr. Riley's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence. Even if the ALJ determines on remand that Dr. Riley's opinion is not entitled to controlling weight, the ALJ should not discount Dr. Riley's opinion based on a purported over-reliance on subjective complaints.

*Kirby* similarly provides scant guidance on this point. In *Kirby*, there was significant evidence that Mr. Kirby exaggerated his symptoms, a fact that is suggested nowhere in Ms. F's medical records or the ALJ's decision. Moreover, the physician whose opinion was discounted due to overreliance on Mr. Kirby's subjective complaints was not a treating physician, but rather a consultant whose statement "deserve[d] no special weight." 500 F.3d at 708, 709. The Commissioner's reliance on these cases is inapt.

In sum, the Court finds that the ALJ erred in discounting Dr. Riley's opinion based on a purported over-reliance on Ms. F's subjective complaints or self-reports, and neither the Commissioner's arguments or the authority on which he relies requires a contrary result.

### 2.    Inconsistency with Objective Evidence

Turning to the ALJ's other rationale for discounting Dr. Riley's opinion, the Court finds reversible error as well. The ALJ stated that Dr. Riley's "findings are inconsistent with the objective evidence" in the record, but this very limited discussion lacks the specificity required by the regulations and the applicable case law. *See Lucas*, 960 F.3d at 1068. ALJs carry enormous case loads and endeavor to provide reasoned and well-explained decisions in every claim they adjudicate. Federal courts do not reverse ALJ decisions where an arguably sparse discussion can be explained as a "mere drafting oversight," but they must reverse where the ALJ fails to follow the applicable regulations. *See Brueggemann v. Barnhart*, 348 F.3d 689, 694 ("[T]he ALJ's failure to cite [an applicable regulation] anywhere in his decision was not a mere drafting oversight, but accurately reflected his failure to follow the procedures proscribed here."). Here, the absence of any explanation regarding the alleged "inconsistency" between Dr. Riley's assessment and the objective evidence cannot be

deemed a mere drafting oversight. Instead, it is a failure to adhere to the regulations requiring the ALJ to provide specificity when discounting a treating source's opinion. Although the ALJ elsewhere described Ms. F's medical history and cited to treatment records from the relevant period, as it stands, the Court cannot determine what objective evidence in those records was believed to be incompatible with Dr. Riley's assessment.

The Commissioner attempts to save the denial by pointing to certain evidence in the record, suggesting that Dr. Riley's opinion was, in fact, inconsistent with the objective evidence. Def.'s Mem. at 13 [ECF No. 15]. For example, the Commissioner notes medical records showing normal joint findings, range-of-motion assessments, and strength-and-sensation findings; the absence of deformities in Ms. F's extremities; and observations of normal posture, gait, station, and coordination. R. 1312, 1728, 1748, 1091, 1684, 1681. However, it is not immediately apparent that these objective findings are "inconsistent" with Dr. Riley's assessment. While these medical records reflect physical examinations with less severe findings, they do not necessarily contradict Dr. Riley's determinations regarding how much weight Ms. F can reasonably be expected to lift on a frequent (or even occasional) basis; how long she can sit and stand in an 8-hour day; and the degree to which she can engage in certain postural activities, neck movements, manipulative acts, and other functional activities.

Moreover, the record contains evidence that is supportive of, rather than inconsent with Dr. Riley's findings. For example, Ms. F had abnormal MRI findings for her shoulder and spine. R. 937, 960–65. In December 2017, Dr. Ronald Hardrict, opined that Ms. F struggles with daily pain, which will indefinitely impact her mobility and ability to engage in

13

weight-bearing activities. R. 1186. Dr. Hardrict linked these assessments to Ms. F's diagnoses of rheumatoid arthritis and diabetes and suggested that she will not be able to work for the foreseeable future. *Id.* Ms. F's rheumatology provider, Clinical Nurse Practitioner Jean Marie Schaaf, has given Ms. F a poor prognosis in light of her high cyclic citrullinated peptide antibodies. Nurse Schaaf reached this assessment even when observing improvement in Ms. F's daily pain and function, suggesting that Ms. F's problems are intractable despite occasional signs of improvement. R. 1274–85. Given this and other evidence in the record as a whole, the Court cannot overlook the ALJ's failure to explain specifically what objective evidence he found to actually contradict Dr. Riley's opinion.[4]

The Court notes that an ALJ is not generally required to discuss each factor laid out in §§ 404.1527(c) and 416.927(c). Here, however, because the Court finds the two reasons supplied by the ALJ to be lacking in both support and specificity, the absence of any discussion regarding the factors in the regulations also justifies reversal and a remand for further consideration. The ALJ's opinion makes no mention of the lengthy treatment

---

[4]    The Court is also troubled by the ALJ's decision to give great weight to the opinions of Dr. Hadden and Dr. Richard, both of whom found that Ms. F was capable of doing the equivalent of medium work. Neither of these physicians had access to Ms. F's full medical history, giving their opinions many months before the record was closed and before Dr. Riley offered her opinion. *See Willcockson v. Astrue*, 540 F.3d 878, 879–80 (8th Cir. 2008) (remanded, in part, due to 17-month gap between nonexamining consultant's opinion and the date of the hearing). Neither of them treated or even examined Ms. F personally, and yet their assessments appear to be the primary medical evidence the ALJ relied on in determining that Ms. F could perform medium work with a few added restrictions. Indeed, the records the ALJ cites to elsewhere in the written decision do not explicitly state that Ms. F was able to occasionally lift and carry up to 50 pounds and frequently lift and carry up to 25 pounds. It is difficult to see why these opinions would properly be considered consistent with the record as a whole while Dr. Riley's opinion was so heavily discounted.

relationship between Dr. Riley and Ms. F, nor the frequency of Ms. F's visits. These factors should entitle Dr. Riley's opinion to additional weight. Similarly, the ALJ's opinion does not discuss the support provided in Dr. Riley's opinion for the various limitations she assessed. Indeed, it overlooks them. As noted, Dr. Riley linked her assessment to X-ray and MRI results and diagnoses that are among Ms. F's recognized medically determinable severe impairments. Under the regulations this too indicates Dr. Riley's assessment was entitled to greater weight than the ALJ assigned.

### 3.    The Commissioner's Remaining Arguments

Finally, the Court addresses two additional arguments raised by the Commissioner in support of its motion for summary judgment. The Commissioner asserts that it was appropriate to discount Dr. Riley's opinion because she may have based her functional assessment on a desire to help Ms. F recover benefits. Def.'s Mem. at 14. In support, the Commissioner points to an excerpt from the Fifth Circuit's decision in *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). The *Scott* court noted that a treating source's opinion can be discounted when it appears that the doctor is "leaning over backwards" to support the application for disability benefits." *Id.* In this passage, the Fifth Circuit cited *Whitney v. Schweiker*, 695 F.2d 784 (7th Cir. 1982). The Court finds the Commissioner's reliance on these cases improper.

In both *Scott* and in *Whitney*, the courts stated that an ALJ's supposition that a treating provider is attempting to assist his or her patient cannot override the principle that medical source statements should receive more weight when they are adequately supported by acceptable clinical and diagnostic laboratory techniques. Such a hypothesis must also yield to

the reality that treating providers have greater familiarity with their patients' conditions. *Scott*, 770 F.2d at 485–86 (remanding where the treating provider's opinion had "ample evidentiary support" despite the ALJ's determination that there were no clinical or laboratory findings to support the physician's opinion, but there remained questions about the provider's "credibility"); *Whitney*, 695 F.2d at 788–90 (remanding for further consideration of the treating provider's "credibility" where there was objective evidence to support the doctor's opinion and nothing in the record suggested the physician was "leaning over backwards to support the application for disability benefits").

Here, there is no evidence in the record that Dr. Riley provided the opinion she did based on a desire to help Ms. F obtain benefits. Instead, on the face of the opinion, Dr. Riley relied on her own independent medical judgment in assessing Ms. F's limitations. The Commissioner points to nothing in the record to support its supposition that Dr. Riley was "bending over backwards" to help Ms. F obtain benefits, and the Court's thorough review of the record has found nothing to which the Commissioner could reasonably cite to support this suggestion. The Court finds the Commissioner's reliance on these cases thoroughly unpersuasive and the suggestion that Dr. Riley's opinion is not credible is wholly unsupported.

The Commissioner also attempts to devalue Dr. Riley's opinion by offering a second reason that was not relied on by the ALJ at all. The Commissioner suggests that Dr. Riley's use of a form with a checklist makes her opinion too conclusory to be worthy of deference. Def.'s Mem. at 14 ("[T]he form is nothing more than an unsupported checklist, which the courts disfavor."). The Court rejects this argument. A doctor's opinion is not "deficient *ipso*

*facto*" because it is provided on a form that calls for evaluation of limitations by checking boxes. *Reed v. Barnhart*, 399 F.3d 917, 921–22 (8th Cir. 2005). This is not, as the Commissioner contends, a case in which a physician's opinion "cite[d] no medical evidence[;] and provide[d] little to no elaboration" for the assessment of her patient's functional abilities. *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). Rather, Dr. Riley's opinion is offered in the form of a medical checklist questionnaire, but she did not merely mark boxes indicating her ultimate assessment. Rather, she described the evidence and diagnoses on which she relied in making her assessments. Thus, her opinion is neither overly conclusory nor boilerplate and should not be discounted on this basis.

## V.    Conclusion and Recommendation

Based on the discussion above, the Court concludes that the ALJ did not provide good reasons for discounting Dr. Riley's opinion and this constitutes reversible error. Dr. Riley's opinion sets forth far more significant limitations than those reflected in the RFC determination. Therefore, this case should be remanded to the Agency so that Dr. Riley's opinion may be properly assessed and assigned weight in the RFC analysis. Dr. Riley's opinion should not be rejected or discounted due to over-reliance on Ms. F's self-reports, as that rationale lacks support in the record. Any assessment of Dr. Riley's opinion for consistency with the objective evidence in the record and any other evidence before the Agency should be described with greater specificity. The Commissioner should also be required to evaluate and discuss how the factors in 20 C.F.R. §§ 404.1527 and 416.927 impact the weight to which Dr. Riley's opinion is entitled. For these reasons, the Court

recommends that this case be remanded to the Agency for further proceedings consistent with this opinion.

Based on the foregoing, the Court makes the following recommendation:

1. Ms. F's motion for summary judgment **(ECF No. 12)** should be **GRANTED**;

2. The Commissioner's motion for summary judgment **(ECF No. 14)** should be **DENIED**; and

3. This case should be remanded to the Social Security Administration for further proceedings pursuant to sentence 4 of 42 U.S.C. § 405(g).

Date: January 4, 2021

_s/Katherine Menendez_
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.